PEARSON, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| DENIS MBULIH, | ) | |
| | ) | CASE NO. 4:26-CV-00530 |
| Petitioner, | ) | |
| | ) | |
| *v.* | ) | JUDGE BENITA Y. PEARSON |
| | ) | |
| IMMIGRATION AND CUSTOMS | ) | |
| ENFORCEMENT, *et al.*, | ) | **MEMORANDUM OF** |
| | ) | **OPINION AND ORDER** |
| Respondents. | ) | [Resolving ECF Nos. 6, 8, 9, 10, 13] |

The Court considers a Petition for a Writ of *Habeas Corpus* under 28 U.S.C. § 2241 against a Motion to Dismiss under Fed. R. Civ. P. 12(b)(1) and 12(b)(6).  *See* ECF Nos. 1, 8. *Pro se* Petitioner Denis Mbulih is a citizen of Cameroon in custody and facing removal from the United States.  Respondents are United States Immigration and Customs Enforcement ("ICE") and the United States Department of Homeland Security ("DHS").  Petitioner argues that Respondents violated his constitutional and statutory rights under the Fourth, Fifth, and Sixth Amendments and the Immigration and Nationality Act ("INA") of 1952.  Respondents counter that the Court has no jurisdiction to grant relief and, even if it did, the Petition fails to state a claim.  On review, Respondents' Motion to Dismiss, *see* ECF No. 8, is granted and the Petition for a Writ of *Habeas Corpus*, *see* ECF No. 1, is dismissed.

(4:26-CV-00530)

## I.

### A.

Petitioner left Cameroon and entered the United States on June 6, 2010.  *See* ECF No. 8–2 at PageID #: 174.  He was granted admission as a non-immigrant visitor with authorization to remain in America until December 4, 2010.  *See* ECF No. 8–2 at PageID #: 174.  He stayed past that date and, the next year, DHS gave him a Notice to Appear for removal proceedings.  *See* ECF No. 8–2 at PageID #: 174.  At a removal hearing, an immigration judge ("IJ") from the Executive Office for Immigration Review ("EOIR") sustained Petitioner's removability to Cameroon.  *See* ECF No. 8–2 at PageID #: 174.  In the interim, Petitioner filed applications under Form I–589 (for asylum), Form EOIR–42B (for cancellation of removal), and Form I–485 (for permanent residency).  *See* ECF No. 8–2 at PageID #: 174.  He later withdrew his asylum and cancellation applications.  *See* ECF No. 8–2 at PageID #: 175.  The EOIR then denied his residency application and the Board of Immigration Appeals ("BIA") denied his subsequent appeal.  *See* ECF No. 8–2 at PageID #: 175.

One year later, the BIA allowed Petitioner to pursue removal relief under the Convention Against Torture ("CAT").  *See* ECF No. 8–2 at PageID #: 175.  After four hearings held between June 2022 and January 2023, the EOIR denied Petitioner's CAT application.  After making a credibility determination, the IJ found Petitioner untrustworthy due to his testimonial and documentary inconsistencies, omissions in multiple immigration applications, and problematic demeanor during examination.  *See* ECF No. 8-2 at PageID ##: 184–88.  On the merits, the IJ determined that Petitioner had provided material support (*e.g.*, financial contributions, legal consultation, and logistical assistance) to the Ambazonia Governing Council ("AGC"), an anglophonic Cameroonian separatist group and undesignated terrorist organization under the

2

(4:26-CV-00530)

INA.  *See* ECF No. 8-2 at PageID ##: 189–91.  He also found Petitioner "failed to establish that he faces a particularized threat of torture"—as required by 8 C.F.R. § 208.16(c)(4)—if returned to Cameroon and ordered him removed from the United States.  *See* ECF No. 8–2 at PageID ##: 191–93.  Petitioner appealed the CAT denial to the BIA.

On December 13, 2025, Petitioner was arrested by local police in Stow, Ohio and charged with aggravated burglary, aggravated menacing, assault, and resisting arrest.  *See Ohio v. Mbulih*, No. CR-2025-12-32804 (Summit Cty. Com. Pl. Dec. 18, 2025).  He was released from custody four days later and immediately arrested by ICE.  *See* ECF No. 8–1 at PageID #: 160.  After administrative processing at a nearby federal facility, he was transferred to detention at the Northeast Ohio Correctional Center ("NEOCC") in Youngstown, Ohio.  *See* ECF No. 8–1 at PageID #: 161.  His application for release on bond was denied on April 7, 2026 after the assigned IJ found that:

> . . [Petitioner] is subject to mandatory detention pursuant to INA Section [§ 1226](C)(1)(D), which mandates the detention of aliens removable for terrorism-related grounds, including providing material support to a terrorist organization. [He] is also a danger to the community.

ECF No. 8–5 at PageID #: 218.  Finally, the BIA denied Petitioner's CAT appeal on April 20, 2026 and issued a final order of removal.  *See* ECF No. 8–6 at PageID #: 221.  Petitioner was transported from NEOCC  to the Summit County Jail ("SCJ") in Akron, Ohio around May 5, 2026 for resolution of his state criminal proceedings.  *See* ECF No. 12 at PageID #: 256.  He remains at SCJ today.  *See* ECF No. 13 at PageID #: 266.

**B.**

On March 4, 2026, Petitioner entered a Petition for a Writ of *Habeas Corpus* in the United States District Court for the Northern District of Ohio under 28 U.S.C. § 2241.  *See* ECF

3

(4:26-CV-00530)

No. 1.  He filed a "supplement" on April 21, 2026, which the Court construed as an amended and superseding Petition.  *See* ECF No. 7.  He asserts six grounds for relief therein: (I) unlawful detention under 8 U.S.C. § 1226; (II) detention without a meaningful bond process; (III) indefinite detention in violation of due process; (IV) unconstitutionality of a custody determination; (V) unlawful arrest without a signed warrant; and (VI) violation of the right to a speedy trial.  *See* ECF No. 7 at PageID ##: 77–80.  He demands immediate release from detention or federal accommodations to attend his criminal proceedings in state court.  *See* ECF No. 1 at PageID #: 9.

Respondents moved to dismiss the Petition under Fed. R. Civ. P. 12(b)(1) and 12(b)(6), on three arguments.  *First*, that the Court lacks jurisdiction to grant *habeas* relief under 8 U.S.C. § 1252(g).  *See* ECF No. 8–1 at PageID #: 162.  *Second*, that the Court lacks jurisdiction to grant *habeas* relief under 8 U.S.C. § 1252(b)(9).  *See* ECF No. 8–1 at PageID #: 163.  And *third*, that even if the Court had jurisdiction, Petitioner's pre-removal detention is mandatory under federal law.  *See* ECF No. 8–1 at PageID #: 164.

Petitioner responded in opposition, claiming that dismissal is unwarranted because "[the] Court has jurisdiction over all matters concerning [the] constitutionality of USA laws and civil rights against the [f]ederal government and all its agencies."  ECF No. 10 at PageID #: 244.  He also contends that "ICE/DHS has made trumped up charges of terrorism in order to maintain the [P]etitioner in detention."  ECF No. 10 at PageID ##: 246–47.  He also filed a "Motion for Default Judgment and Motion/Alternative Request for Release on Supervision," *see* ECF No. 9,

4

(4:26-CV-00530)

a "Motion for Ruling," *see* ECF No. 10, and—filed by his wife under an alleged power of attorney—a "Motion for a Plea Review of ICE Hold,"[1] *see* ECF No. 13.

## II.

In response to a deficient petition for a writ of *habeas corpus*, the government may move to dismiss for "failure to state a claim upon which relief can be granted" under Fed. R. Civ. P. 12(b)(6). As commanded by *Bell Atl. Corp. v. Twombly* and *Ashcroft v. Iqbal*, district courts use a two-pronged approach when resolving a motion to dismiss. *See* 550 U.S. 544, 552 (2007); 556 U.S. 662, 679 (2009). *First,* a court takes all the petitioner's allegations as true, "even if [they are] doubtful in fact." *Twombly*, 550 U.S. at 555; *see Neitzke v. Williams,* 490 U.S. 319, 327 (1989) ("[Rule 12(b)(6)] does not countenance . . . dismissals based on a judge's disbelief of a complaint's factual allegations").[2] *Second*, after taking those allegations as true, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* Facial plausibility is "factual content that allows the court to draw the reasonable inference that the [respondent] is liable for the misconduct alleged." *Id.* at 678.

## III.

### A.

The Court begins with jurisdiction. The proper respondent in a federal *habeas* claim is the petitioner's immediate custodian, rather than ICE or DHS *writ large*. *See Roman v. Ashcroft,* 340 F.3d 314, 322 (6th Cir. 2003) ("a detained alien generally must designate his immediate custodian as the respondent to his *habeas corpus* petition"). Respondent propriety is a

---

[1] Petitioner's wife's alleged power of attorney has no authority in this matter.

[2] But "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678.

5

(4:26-CV-00530)

jurisdictional requirement in the Sixth Circuit.  But because the Petition fails on the merits, the Court need not substitute the proper respondent *sua sponte*.  *See Rumsfeld v. Padilla*, 542 U.S. 426, 435 (2004).

Next, the Court rejects Respondents' repetitious jurisdiction-stripping arguments, as it has *ad nauseam* over the preceding months.  *See E.V. v. Raycraft*, No. 4:25-CV-2069, 2025 WL 3122837, at *7 (N.D. Ohio Nov. 7, 2025); *Dornveil v. Noem*, No. 4:25-CV-01809, 2026 WL 539116, at *5 (N.D. Ohio Feb. 26, 2026); *Singh v. Stevens*, No. 3:26-CV-133, 2026 WL 456489, at *2 (N.D. Ohio Feb. 18, 2026); *Hernandez-Cine v. Voorhies*, No. 4:26-CV-421, 2026 WL 972364, at *2 (N.D. Ohio Apr. 10, 2026).  Still, the Motion to Dismiss is well-taken and granted.

**B.**

In Ground I, Petitioner argues his detention is discretionary and governed by 8 U.S.C. § 1226 because his BIA appeal is pending "with an automatic stay[.]"  ECF No. 7 at PageID #: 77.  Since first filing, however, the BIA denied Petitioner's appeal and affirmed his order of removability.  *See* ECF No. 8–6.  Any automatic stay—if one ever existed—is gone, the predicate underlying Petitioner's claims extinguished by subsequent administrative proceedings.  Ground I is therefore dismissed as moot.  *See Demis v. Sniezek*, 558 F.3d 508, 512 (6th Cir. 2009).

**C.**

In Grounds II, III, and IV, Petitioner claims his detention is unlawful, unconstitutional, and that he was denied a meaningful bond process.  Each argument fails as a matter of law.  The statutory framework governing Petitioner's detention falls in two distinct stages: *first*, detention *before* a final order of removal under 8 U.S.C. § 1226; and *second*, detention *after* a final order

6

(4:26-CV-00530)

of removal under 8 U.S.C. § 1231.  Both statutes justify Petitioner's detention and raise no constitutional concerns.

While his BIA appeal was ongoing, Petitioner's detention was governed by 8 U.S.C. § 1226.  In 2023, the EOIR determined he "is a member or was a member of the AGC, a terrorist organization, thus he has engaged in terrorist activity under 8 U.S.C. §1182(a)(3)(B)(i)(VI) and § 1227(a)(4)(B)," and that "he has also engaged in terrorist activity by providing material support to the AGC . . . [under] 8 U.S.C. § 1182(a)(3)(B)(iv)(VI)."  ECF No. 8–2 at PageID #: 191 (cleaned up).  That finding was affirmed on April 7, 2026 when the EOIR denied release on bond because Petitioner "is subject to mandatory detention pursuant to 8 U.S.C. § 1226(c)(1)(D), which mandates the detention of aliens removable for terrorism-related grounds, including providing material support to a terrorist organization."[3]  ECF No. 8–5 at PageID #: 218.  Petitioner's pre-removal detention was thus required by law, and his bond hearing confirmed he did not qualify for discretionary release.

The legality of pre-removal detention under § 1226 is well-established because "detention during deportation proceedings [i]s a constitutionally valid aspect of the deportation process."  *Demore v. Kim*, 538 U.S. 510, 523 (2003).  Under *Demore*, the federal government's interest in preventing flight and protecting the community justified mandatory detention.  *Id.* at 528–29.  Given (1) the terror-related basis for Petitioner's detention and (2) the IJ's express

---

[3] The AGC has not been formally designated as a Foreign Terrorist Organization ("FTO") under § 1189.  Rather, the EOIR's findings rest on the INA's broad definition of terrorist activity under § 1182(a)(3)(B), which encompasses material support provided to undesignated organizations that engage in terrorist activity.  The absence of a formal FTO designation does not affect the mandatory detention analysis under § 1226(c)(1)(D).

7

(4:26-CV-00530)

finding that he presents a "danger to the community," his pre-removal detention under § 1226 was constitutional.

On April 20, 2026, the BIA denied Petitioner's CAT appeal, affirmed his removability, and issued a final order of removal.  *See* ECF No. 8–6.  With that order, Petitioner's detention became governed by § 1231(a)(2)(A), which provides that "[u]nder no circumstance during the removal period shall the Attorney General release an alien who has been found inadmissible under section 1182(a)(2) or 1182(a)(3)(B) of this title or deportable under section 1227(a)(2) or 1227(a)(4)(B)[.]"  Because Petitioner was deemed removable on terrorism-related grounds under both § 1182(a)(3)(B) and § 1227(a)(4)(B), his detention is mandatory.

Still, prolonged post-removal order detention can violate the Constitution because the Supreme Court limits detention under § 1231 to the "reasonable time" necessary to effectuate removal.  *See Zadvydas v. Davis*, 533 U.S. 678, 680 (2001) (noting that after six months, "once an alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must furnish evidence sufficient to rebut that showing").  But Petitioner has only been in custody for five months.  And even if the detention were longer, *Zadvydas* does not extend the six-month limitation to those detained under "terrorism or other special circumstances," a carve-out that encompasses the instant circumstances given the EOIR's finding of material support to the AGC.  *Id.* at 696 (validating "forms of preventive detention and . . . heightened deference to the judgments of the political branches with respect to matters of national security").  Petitioner's present detention is therefore mandatory under § 1231(a)(2)(A), lawful under the terrorism exception recognized in *Zadvydas*, and raises no cognizable due process concerns.  Grounds II, III, and IV are dismissed.

**D.**

8

(4:26-CV-00530)

In Ground V, Petitioner claims he was unlawfully arrested by ICE without a signed warrant.  A § 2241 petition is not the appropriate vehicle to challenge the circumstances of an arrest because a party "may not pursue a civil rights action in a *habeas* petition."  *McElroy v. Leonbruno*, No. 1:23 CV 203, 2023 WL 3852593, at *2 (N.D. Ohio May 23, 2023); *see Naresh v. Klinger*, No. 2:19-CV-12800, 2019 WL 6486122, at *1 (E.D. Mich. Dec. 3, 2019) (noting that "the way to seek relief for [an unlawful arrest] claim is to file a separate civil rights action pursuant to 42 U.S.C. § 1983" or *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971).  Accordingly, Ground V is dismissed.

## E.

In Ground VI, Petitioner claims a deprivation of the right to a speedy trial under the Sixth Amendment.  That claim is asserted in connection with his pending state criminal proceedings in Summit County.  *See Mbulih*, No. CR-2025-12-32804.  But federal courts must generally refrain from interfering with ongoing state criminal proceedings.  *See Younger v. Harris*, 401 U.S. 37, 43–44 (1971). And a *habeas* petitioner asserting a speedy trial violation facing state prosecution must first exhaust all available state court remedies before seeking federal relief.  *See Atkins v. People of State of Mich.*, 644 F.2d 543, 547 (6th Cir. 1981) (noting that federal intervention in pending state proceedings "run[s] afoul of the exhaustion requirement and the underlying concerns of federalism").  Petitioner offers no evidence that he has litigated a speedy trial claim before the Summit County Court of Common Pleas or sought relief from the state appellate courts or Ohio Supreme Court.  The exhaustion requirement reflects the fundamental principle that state courts must be given a full opportunity to correct alleged constitutional violations before federal intervention is justifiable.  *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). Petitioner has not satisfied that requirement.  The record also shows that Petitioner has been

(4:26-CV-00530)

transferred to state custody at SJC to attend his criminal proceedings as he requested.  Ground VI is dismissed for failure to exhaust state remedies or, in the alternative, as moot.

**IV.**

Respondents' Motion to Dismiss is granted.  *See* ECF No. 8.  Ground I is dismissed as moot.  Grounds II, III, and IV are dismissed on the merits under 8 U.S.C. § 1226(c)(1)(D) and § 1231(a)(2)(A).  Ground V is dismissed as noncognizable.  Ground VI is dismissed for failure to exhaust remedies or, in the alternative, as moot.  Denis Mbulih's Petition for a Writ of *Habeas Corpus* (ECF No. 1) is dismissed.  His Motion to Proceed *In Forma Pauperis*, *see* ECF No. 6, Motion for Default Judgment/Release on Supervision, *see* ECF No. 9, Motion for Ruling, *see* ECF No. 10, and Motion for a Plea, *see* ECF No. 13, are simultaneously denied as moot.  A separate entry of judgment shall issue.

IT IS SO ORDERED.

May 21, 2026                                                              */s/ Benita Y. Pearson*
Date                                                                          Benita Y. Pearson
                                                                              United States District Judge

10